IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:21-cv-4267 |
| Plaintiff, | : | |
| v. | : | |
| NINETEEN THOUSAND ONE HUNDRED FOUR AND 00/100 DOLLARS ($19,104.00) IN UNITED STATES CURRENCY, | : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| and | : | |
| THIRTY-TWO THOUSAND FIFTY AND 00/100 DOLLARS ($32,050.00) IN UNITED STATES CURRENCY, | : | |
| Defendants. | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendants in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## THE DEFENDANTS IN REM

2. Defendant 1 is a total of Nineteen Thousand One Hundred Four and 00/100 Dollars ($19,104.00) in United States Currency. On or about March 25, 2021, the Department of Homeland Security, Homeland Security Investigations ("HSI") seized Defendant 1 from a pick-up truck driven by Emmanuel Trujillo Trujillo in Canal Winchester, Ohio, pursuant to a probable cause search of the vehicle during a traffic stop.

3. On or about March 30, 2021, the HSI transferred custody of Defendant 1 to the Department of Homeland Security, U.S. Customs and Border Protection's ("CBP") National Seized Currency fund, where it will remain during the pendency of this action.

4. Defendant 2 is a total of Thirty-Two Thousand Fifty and 00/100 Dollars ($32,050.00) in United States Currency. On or about March 25, 2021, the HSI seized Defendant 2 from the Public Storage, Unit 1025, located at 5725 Gender Road, Canal Winchester, Ohio, pursuant to a consent search.

5. On or about March 30, 2021, the HSI transferred custody of Defendant 2 to the CBP's National Seized Currency fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

6. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendants under 21 U.S.C. § 881(a)(6). This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

7. This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

8. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendants were found in the Southern District of Ohio.

## BASIS FOR FORFEITURE

9. The defendants are subject to forfeiture under 21 U.S.C. § 881(a)(6) because they represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

10. In or about March 2021, investigators with the Ohio Northeast Smuggling Enforcement Team ("ONSET") conducted surveillance of Richard Aguilar ("Aguilar") and Jason Perrin ("Perrin") in the Akron, Ohio area. Based on their investigation, ONSET investigators believed that Aguilar and Perrin were involved in the trafficking of illegal narcotics.

11. While conducting surveillance on or about March 25, 2021, investigators followed Aguilar and Perrin to the Columbus, Ohio area.

12. With the assistance of the Central Ohio High Intensity Drug Trafficking Area / Ohio Organized Crime Investigations Commission Task Force and HSI, investigators followed Aguilar and Perrin to the Ashbrook Run Apartments located at 5222 Flower Valley Drive, Canal Winchester, Ohio. Aguilar and Perrin drove around the apartment complex for a short period of time and appeared to be looking for a specific apartment.

13. At approximately 5:10 p.m., Aguilar and Perrin parked their vehicle and entered an apartment in the complex located at 5195 Leafy Glade Drive, Canal Winchester, Ohio.

Investigators observed that Aguilar was carrying what appeared to be a gray backpack over his shoulder when he entered the apartment.

14. After a short time, Aguilar and Perrin exited the apartment and entered their vehicle. Investigators noted that Aguilar and Perrin were not carrying anything when they left the apartment.

15. As Aguilar and Perrin entered their vehicle, investigators saw another individual, later identified as Emmanuel Trujillo Trujillo ("Trujillo Trujillo"), exit the apartment located at 5195 Leafy Glade Drive.

16. Trujillo Trujillo approached a tan Chevrolet S-10 pick-up truck, bearing Ohio registration PKT7733, and placed a white trash bag in the bed of the pick-up truck. He then entered the vehicle and left the apartment complex's parking area.

17. Aguilar and Perrin also left the apartment complex.

18. Investigators simultaneously maintained surveillance on both vehicles.

19. Trujillo Trujillo drove to the Public Storage located at 5725 Gender Road, Canal Winchester, Ohio. When he arrived, Trujillo Trujillo exited his vehicle carrying a black plastic bag and accessed storage unit 1025.

20. After a short time, Trujillo Trujillo exited the storage unit carrying the same bag, closed the unit, returned to the pick-up truck, and left the storage facility. Investigators maintained surveillance on the pick-up truck.

21. At approximately 6:00 p.m., Fairfield County, Ohio Sheriff's Deputy Zachary Spires ("Deputy Spires") initiated a traffic stop of the pick-up truck for failure to signal when turning onto US 33 in Canal Winchester, Ohio.

22. Deputy Spires approached the pick-up truck and made contact with the driver,

Trujillo Trujillo. While speaking with Trujillo Trujillo, Deputy Spires learned that he did not possess a valid driver's license.

23. Deputy Spires observed a large amount of United States currency below Trujillo Trujillo's feet on the floorboard of the pick-up truck and requested assistance from Franklin County, Ohio Sheriff's Office Canine Unit Deputy Zach Cooper ("Deputy Cooper") and his canine partner "Indy" to conduct an open-air sniff of the pick-up truck.

24. Deputy Cooper arrived at the traffic stop at approximately 6:22 p.m. and approached the pick-up truck with canine Indy. Deputy Cooper noticed that Indy showed an extreme change in behavior when sniffing around the passenger side door and its open window. Indy's sniffing increased as he stayed and intently sniffed the passenger side door area. As the team moved on, Deputy Cooper noted similar behavior from Indy when he approached the tailgate area of the pick-up truck.

25. Deputy Cooper advised Deputy Spires that Indy did not indicate on a pure odor source, but he believed that Indy's extreme sniffing behavior indicated that a narcotic odor was present within the pick-up truck.

26. Based on the investigation and the behavior of Indy, investigators conducted a probable cause search of the pick-up truck. Upon entering the truck, investigators located a large amount of United States currency underneath the driver's seat. Investigators also found the black plastic bag that they had seen Trujillo Trujillo carrying when he accessed the storage unit. Inside the bag, investigators discovered numerous rubber-banded bundles of United States currency.

27. While searching the pick-up truck, investigators also found numerous receipts for cash transfers, a 2018 "1099 Misc" income tax form for Trujillo Trujillo for nonemployee compensation in the amount of $27,815.00, and a Chase Bank checking and savings statement

from January 2021 bearing Trujillo Trujillo's name.

28. After the currency was discovered, HSI Task Force Officers Jared Hasler ("TFO Hasler") and Ryan Gibbons ("TFO Gibbons"), who are assigned to the ONSET, approached Trujillo Trujillo to speak with him about the currency found in his vehicle.

29. Trujillo Trujillo told the officers that he had about $30,000.00 in the pick-up truck and that he was going to purchase two vehicles from a mechanic's shop for $5,000.00. He alleged that he had earned the money through self-employment in construction and that he had a business installing floors and tile and did concrete work. Trujillo Trujillo admitted that he had not claimed the income on his last tax return.

30. Trujillo Trujillo advised the officers that he had lived in the United States without legal status for approximately sixteen years. Trujillo Trujillo was in possession of a passport from Mexico.

31. When the officers asked Trujillo Trujillo where he had physically obtained the currency found in the pick-up truck, he stated that he had retrieved it from a storage unit. Trujillo Trujillo confirmed that he had accounts at both Chase Bank and Bank of America, but he claimed that he kept the currency in his storage unit.

32. Based on their training, experience, and investigation, investigators believed that the currency found in the pick-up truck was proceeds from illegal drug activity.

33. An official count of the United States currency found in the pick-up truck revealed that the currency totaled $19,104.00 (Defendant 1) as follows:

| Denomination | Quantity | Total |
|---:|---:|---:|
| $100 | 8 | $800.00 |
| $50 | 115 | $5,750.00 |
| $20 | 478 | $9,560.00 |
| $10 | 185 | $1,850.00 |
| $5 | 228 | $1,140.00 |
| $1 | 4 | $4.00 |
| | | $19,104.00 |

34. The officers asked Trujillo Trujillo if he would consent to a search of his storage unit at the Public Storage located at 5275 Gender Road, Canal Winchester, Ohio, and his residence located at 5195 Leafy Glade Drive, Canal Winchester, Ohio. Trujillo Trujillo consented to both searches and signed a Department of Homeland Security Consent to Search form.

35. After receiving consent to search, the investigators and Trujillo Trujillo traveled to the Public Storage located at 5275 Gender Road, Canal Winchester, Ohio. Using a key provided by Trujillo Trujillo, investigators unlocked storage unit 1025 and entered the unit.

36. Investigators observed that the unit contained a variety of personal items. Among these items, they located an Intex airbed box. Upon opening the box, investigators discovered numerous rubber-banded bundles of United States currency.

37. When asked about the currency in the storage unit, Trujillo Trujillo advised that this currency also was earned from his self-employment.

38. Based on their training, experience, and investigation, investigators believed that the currency found in the storage unit was proceeds from illegal drug activity.

39. An official count of the United States currency found in the storage unit revealed that the currency totaled $32,050.00 (Defendant 2) as follows:

| Denomination | Quantity | Total |
|---|---|---|
| $100 | 56 | $5,600.00 |
| $50 | 197 | $9,850.00 |
| $20 | 820 | $16,400.00 |
| $10 | 29 | $200.00 |
| | | $32,050.00 |

40. After searching the storage unit, investigators and Trujillo Trujillo traveled to his apartment located at 5195 Leafy Glade Drive, Canal Winchester, Ohio.

41. Upon entering the residence, investigators located a backpack that appeared to be the same backpack investigators had seen Aguilar carrying into the apartment earlier that day.

42. Investigators found that the backpack was empty except for a broken purple rubber band. Investigators noted that this rubber band was the same type found on the currency seized from the pick-up truck.

43. When asked about the backpack, Trujillo Trujillo initially stated that it was not his. He further stated that he did not know how the backpack got into his apartment, that his apartment was open most of the day, and that someone could have brought the backpack into the residence without his knowledge.

44. Investigators told Trujillo Trujillo about the surveillance conducted that day and that they had seen Aguilar enter the residence carrying the same backpack. Investigators further explained that they knew Aguilar and Perrin had entered his residence and that they were aware Trujillo Trujillo knew about the visit because investigators had observed him leaving the apartment shortly after the departure of Aguilar and Perrin.

45. After hearing this, Trujillo Trujillo changed his story and advised investigators that the backpack did belong to Aguilar but that he did not know Aguilar or Perrin. Trujillo Trujillo stated that someone in Mexico had contacted him the previous day and told him to expect a currency delivery to his residence on March 25, 2021.

46. Trujillo Trujillo admitted that he suspected the currency was from illegal narcotics sales.

47. Trujillo Trujillo reiterated that he did not know Aguilar or Perrin and that he just accepted the currency from inside the backpack as he was told to do by the individual in Mexico.

48. Trujillo Trujillo further stated that when he was pulled over, he was driving to deliver the money, but he claimed that he was unable to provide the delivery location because he had not received it yet.

49. Trujillo Trujillo advised that this was not the first time that he had accepted currency for an unknown individual in Mexico. He elaborated by telling investigators that approximately one week prior, he had picked up a cardboard box from a nearby car wash. Trujillo Trujillo estimated that the box contained approximately $295,000.00.

50. At this time, TFO Hasler advised Trujillo Trujillo that based on these events and their training and experience, investigators had reason to believe that the currency found in the pick-up truck and the storage unit was proceeds from illegal drug activity and that the HSI would be administratively seizing the currency.

51. Investigators provided Trujillo Trujillo with a receipt for the seized property and left his residence.

52. During the time that investigators were with Trujillo Trujillo, other investigators continued surveillance on Perrin and Aguilar. Investigators ultimately conducted a traffic stop on their vehicle which resulted in the seizure of suspected fentanyl and their arrests.

53. Investigators executed a search warrant at Perrin's residence and found suspected cocaine, fentanyl, and heroin; a total of $33,599.00 in United States currency; two firearms; two hydraulic presses; a pill press; and a money counter, among other things. Investigators seized an

additional $1,600.00 in United States currency from Aguilar's hotel room.

54. On or about April 15, 2021, an Ohio grand jury returned an indictment in the Summit County Court of Common Pleas (Case Numbers CR 2021-04-1386-A and CR 2021-04-1386-B), charging Aguilar and Perrin with various drug violations related to the events of March 25 and 26, 2021.

55. On or about March 26, 2021, HSI Task Force Officer Benjamin Taylor ("TFO Taylor") and Summit County, Ohio Sheriff's Detective Jess Danner ("Detective Danner") used a MX908 portable mass spectrometer ("MX908") to analyze the currency that the HSI seized from Trujillo Trujillo's pick-up truck and storage unit. TFO Taylor and Detective Danner are both certified as operators of the MX908.

   a. Prior to beginning any testing, TFO Taylor powered on the MX908, performed a cleaning function, and then conducted a system test of the MX908. TFO Taylor received a result from the machine that the system had checked "ok."

   b. Prior to processing each piece of evidence, the officers made sure that the manner in which each package of evidence was opened would not allow any contents of the package to come into contact with other packages or their contents. Each item remained separate of other pieces during evidence processing.

   c. TFO Taylor then took the bag containing the United States currency seized from the storage unit, put on a clean set of disposable gloves, and opened the bag. TFO Taylor took a MX908 test strip and wiped it on the rubber bands holding the currency together. TFO Taylor placed this test strip into the MX908 and received a positive result for the presence of cocaine.

   d. TFO Taylor placed the currency seized from the storage unit back into its

evidence bag, sealed it with tape, and initialed it.

  e. TFO Taylor changed gloves, obtained the bag containing the United States currency seized from the pick-up truck, and opened it. TFO Taylor took a MX908 test strip and wiped it on the rubber bands holding the currency together. TFO Taylor placed this test strip into the MX908 and received a positive result for the trace presence of cocaine.

  f. TFO Taylor placed the currency seized from the pick-up truck back into its evidence bag, sealed it with tape, and initialed it.

56. On or about June 3, 2021, the CBP received a timely claim in the administrative forfeiture proceeding from Trujillo Trujillo. In his claim, Trujillo Trujillo requested court adjudication of his claim to the defendants but did not indicate what, if any, ownership interest he has in the defendants. Trujillo Trujillo did not submit any documents in support of his claim.

57. Based on the foregoing facts, the United States asserts that the defendants, a total of Nineteen Thousand One Hundred Four and 00/100 Dollars ($19,104.00) in United States Currency (Defendant 1) and a total of Thirty-Two Thousand Fifty and 00/100 Dollars ($32,050.00) in United States Currency (Defendant 2), represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846. Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## **CLAIM FOR RELIEF**

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest

*in rem*, directing the United States to arrest and seize the defendants and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendants to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendants to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendants as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney


s/Deborah D. Grimes
DEBORAH D. GRIMES (0078698)
Assistant United States Attorney
Attorney for Plaintiff
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Deborah.Grimes@usdoj.gov

# VERIFICATION

I, Stephen A. Babers, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations, that I have read the foregoing Verified Complaint for Forfeiture and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

8/27/2021
Date

STEPHEN A. BABERS, Special Agent
Department of Homeland Security
Homeland Security Investigations